LEONARD J. BECK, Appellant, v JAY MOTLER et al., Respondents.

Third Department, September 30, 1976

*Streifer & Barnovitz (Francis Bergan* of counsel), for appellant.

*Cook & Tucker (Vernon Murphy* of counsel), for respondents.

MAHONEY, J. The resolution of the issue of whether Leonard J. Beck (hereinafter referred to as Beck, Jr.) is entitled to 50% of Gem Cadillac-Oldsmobile, Inc. (hereinafter referred to as Gem) stock turns solely on a construction of the intention of Leonard S. Beck (hereinafter Beck, Sr.) and Martin Gottlieb in causing Gem to come into being as a new corporate entity to be operated by their respective donees, Beck, Jr. and Jay Motler.

In 1970 Beck, Sr. owned a two-thirds interest in the predecessor corporation of Gem and being desirous of attracting

additional capital to create a successor corporation he entered into negotiations with Martin Gottlieb, a friend experienced in operating an automobile franchise. That such negotiations concluded in an agreement is certain. That the agreement was intended by both parties to inure to the benefit of Beck, Jr. and Motler by installing them as officers and operators of the new corporation is equally certain. That the new corporation (Gem) was created and commenced operations under the joint tutelage of Beck, Jr. and Motler is probatively established. However, that the ownership of Gem was to be joint and the stock was intended to be evenly divided between the beneficiaries of the agreement has been rejected by the trial court on the ground that the oral testimony of the witnesses for the respective parties is contradictory to a degree requiring mutual cancellation and, further, that in the absence of meaningful oral proof the issue raised by the pleadings must be resolved against plaintiff Beck, Jr. because the documentary evidence preponderates in defendant's favor. We disagree.

Beck, Sr. testified that when he invited Gottlieb's participation he owned 66⅔% of Gem's predecessor corporation. Gottlieb does not deny that all he acquired from De Witt for his expenditure of $75,000 was the remaining ⅓ interest in the old corporation. Consequently, to affirm the decision below requires a finding that Beck, Sr. agreed that Gottlieb should acquire an additional 17⅔% rather than 16⅔% of the stock in the predecessor corporation from Beck and that this revised ownership of the old be reflected in the new corporation by Beck's son owning 49% of Gem's stock and Gottlieb's son-in-law 51%. In our view the facts do not support this conclusion.

Since the trial court found the oral testimony unpersuasive, it relied solely on three pieces of documentary evidence each of which reflected a 49-51% stock relationship between Beck, Jr. and Motler. Each of the three was an application to Cadillac and Oldsmobile for a franchise. Beck, Sr. testified that the 49-51% relationship on each of the applications was not a reflection of the true ownership of Gem's stock but, rather, was a deliberate distortion to comport with Gottlieb's insistence that Cadillac and Oldsmobile would deal only with a majority owner. At trial Gottlieb denied not only that Cadillac and Oldsmobile required a principal owner but also that he told the Becks that there was such a requirement. Yet, in a classic example of impeachment by a prior inconsistent statement, Gottlieb was confronted on cross-examination

with his own notarized affidavit wherein he swore that Cadillac franchises are not granted unless the applying corporation is controlled by a principal owner. Impeachment on a central and critical issue should not have been so lightly regarded below nor should it have been ignored in assessing the probative value of the three documents relied upon for complaint dismissal. While the assent by the Becks to falsify the true stock relationship of Beck, Jr. and Motler on the applications cannot be condoned, it is understandable, given the assurance of Gottlieb, a more experienced car franchisee, that principal ownership was a requisite if Gem was to be franchised. The testimony of Gottlieb is suspect not only because it was impeached on a critical issue, but for the further reason that he and Motler had much to gain by causing to be created documentary evidence that apparently reflected an agreement on the part of Beck, Jr. to be a minority stockholder.

In this connection more attention should also have been given to the testimony of Jesse Safir, an experienced attorney who had represented the Rice estate when that entity settled its differences with De Witt prior to the latter's sale of his stock to Gottlieb. Mr. Safir, who had no interest in the outcome of this litigation, testified that the Becks in the course of consulting with him concerning the present dispute, advised him that Gottlieb had promised the Becks that he would issue a signed letter attesting to equal ownership of the stock of Gem after the falsified applications had been delivered to Cadillac. Whereupon, Safir testified, he called Gottlieb on the phone and Gottlieb affirmed that he had made such a promise but would forward the letter only after the Becks had paid one half of the costs he had sustained in causing Cadillac to place the franchise in both Beck, Jr's. and Motler's names. The Becks assented and left a check in the sum of $11,000 with Mr. Safir, said sum being one half of the costs as fixed by Gottlieb. Mr. Safir affirmed this in a letter to Gottlieb. Gottlieb's testimonial response to all this was "But that's a Jesse Safir production. Excuse me, Judge." Why Mr. Safir, a respected attorney, should stage a "production" favorable to the Becks remains unexplained in the record.

In sum, we conclude that the trial court erred in concluding that the oral testimony adduced by the parties was so conflicting as to render all such evidence probatively valueless and, further, to resolve the issue solely on the declarations of ownership on the three franchise applications. These docu-

ments, as proof, were severely damaged as the result of Gottlieb's impeached testimony. The only other piece of documentary evidence in the case, reflecting a 50-50% relationship between Beck, Jr. and Motler, was a sworn statement to the Internal Revenue Service, an agency capable of inflicting penalties much more severe than Cadillac for intentionally inaccurate averments.

The order should be modified, on the law and the facts, by striking the first decretal paragraph thereof and by inserting in its place a new paragraph granting judgment to the plaintiff with costs against Martin Gottlieb, to be taxed by the Clerk; by amending the second paragraph to direct that the capital stock of Gem Cadillac-Oldsmobile, Inc. be issued equally to Leonard J. Beck and Jay M. Motler; and by striking the third paragraph which stayed the execution of the order and judgment, and, as so modified, affirmed; judgment reversed, on the law and the facts, and matter remitted for the entry of a judgment for costs in favor of plaintiff, with costs upon this appeal against Martin Gottlieb.

HERLIHY, J. (concurring). The plaintiff, Beck, Jr. commenced this action seeking a judgment directing the defendants, Martin Gottlieb and Jay Motler, to issue and deliver to him 50% of the authorized shares of Gem. The case was tried without a jury and the trial court found that Beck, Jr. had failed to establish his ownership of 50% of the disputed shares. This finding was based upon certain documentary evidence signed by Beck, Jr. and/or Motler which set forth therein that Beck, Jr. only owned 49% of the stock. I disagree with the trial court and find that as a matter of law the plaintiff by a preponderance of the evidence established that he was entitled to 50% ownership.

The defendants Motler and Gottlieb filed separate answers and review of the record established that Motler in his answer and in his testimony never claimed any right to the ownership of the disputed stock. The record establishes that in the entire dealings which led to the incorporation of Gem and its operation of a new car agency (Cadillacs and Oldsmobiles) neither Motler nor Beck, Jr. had invested any cash or securities owned by them. While Gem was duly authorized as a corporation by the State of New York in 1970 upon an instrument reciting that Motler was the incorporator, no stock has ever been issued and the record establishes that Gottlieb has

effectively maintained control over the corporate books except those relating to the operation of the automobile agency.

It is undisputed that in 1967 the father of Beck, Jr., Beck, Sr., secured a two-thirds interest in the predecessor corporation of Gem which was then operating a Cadillac and Oldsmobile new car agency. This interest secured by Beck, Sr. involved the payment of cash and other consideration on behalf of one De Witt who had previously been the sole owner of the predecessor corporation and De Witt thereafter became a one-third owner. The agreement between the Becks and De Witt contemplated that the interest of Beck, Sr. would become the property of Beck, Jr. at a future date.

In early 1970 the business was having some financial difficulty and Beck, Sr., having been advised by De Witt that he would like to sell his interest, contacted his old friend, Gottlieb, who sometime previously had expressed a desire to own a Cadillac agency.

Gottlieb had formerly owned a Ford car agency and in 1970 was the owner and operator of a car rental agency involving Cadillacs and Oldsmobiles. It is established that an ownership interest in the Beck and De Witt operation would be beneficial to Gottlieb and that his experience and present connections with the representatives of General Motors would be beneficial to the Becks in the successful operation of the business. Gottlieb purchased the one-third interest of De Witt. The record establishes that in regard to Gottlieb's transaction with De Witt, he and Beck, Sr. had orally agreed that a new corporation to own and operate the business would be formed and that the business was to be operated by Beck, Jr. and Motler—Gottlieb's son-in-law.

It is undisputed that Beck, Sr. and Gottlieb are the only persons who have any out-of-pocket moneys invested in the predecessor corporation. Gottlieb and Beck, Sr. orally agreed that the ownership interests in the assets of the predecessor corporation would be determined by Beck, Sr. surrendering a portion of his two-thirds interest to Gottlieb. However, Gottlieb and Beck, Sr., as is often the case among friends, did not reduce their ownership interests to writing even though both were experienced business entrepreneurs. The record unequivocally establishes that they considered themselves partners and that Beck, Sr. intended his interest to be given to Beck, Jr. through the issuance of stock in the new corporation (Gem). The record also establishes unequivocally that Gottlieb

did not intend Motler to have any ownership interest beyond what he was willing to give him at some future time and Motler in these proceedings has made no claim of any ownership interest independent of what Gottlieb might at some time give him. While the application or certificate for incorporation of Gem lists Motler as incorporator, the registration of Gem as a corporation was handled solely by Gottlieb and was simply in furtherance of his agreement with Beck, Sr. This record establishes that as between Beck, Jr. and Gottlieb and Motler the ownership interest of Beck, Jr. was that of a donee of the interest of Beck, Sr. Furthermore, Motler had no ownership interest at all except as Gottlieb might give it to him.

Upon this record the *sole* factual issue which must control is the ownership interests between Beck, Sr. and Gottlieb.

I do not find the documentary evidence relied upon by the trial court as to ownership interests signed by Motler and Beck, Jr. to be of any great weight as they have no interest other than through gift and the arrangements of Beck, Sr. and Gottlieb. The trial court in its decision referred to the testimony of Gottlieb and Beck, Sr. and made no conclusive findings as to their direct agreement which preceded the documentary evidence relied upon.

Beck, Sr. testified that he had agreed to surrender to Gottlieb enough of his interest in the predecessor corporation to make him a 50% owner after the purchase of De Witt's interest by Gottlieb. Gottlieb testified that the agreement between himself and Beck, Sr. was that he, Gottlieb, was to have "control" which in his opinion meant 51% ownership. Gottlieb's testimony establishes that as far as he was concerned, he and Beck, Sr. had become *partners* and that insofar as all monetary matters involving the acquisition of the business and its proper funding, he and Beck, Sr. were to supply needed capital equally.

Beck, Sr. testified solely that he was not giving up to Gottlieb any more of his interest than would leave him with 50%. To the extent that Beck, Jr. had a potential ownership interest, that was also his testimony. The documentary evidence as admissions against interest by Beck, Jr. could not show the intent of Beck, Sr. and the burden in this case was upon Gottlieb to establish that he had acquired from Beck, Sr. more than a 16⅔% interest. The record contains absolutely no evidence of conduct on the part of Beck, Sr. which would support a finding that Gottlieb had acquired anything more

than conceded by Beck, Sr. Furthermore, the record does not establish that the monetary consideration advanced by Gottlieb exceeded in value that of the Becks prior to 1970. Accordingly, the trial court erred in finding that Beck, Jr. had failed to carry his burden of proof.

It should be observed that Gottlieb has taken no appeal from that portion of the order which directs that stock be issued to Jay Motler.

The judgment should be reversed and the order modified in accordance with the majority opinion.

KOREMAN, P. J., concurs with MAHONEY, J.; HERLIHY, J., concurs in a separate opinion; GREENBLOTT and REYNOLDS, JJ., concur in the result.

Order modified, on the law and the facts, by striking the first decretal paragraph thereof and by inserting in its place a new paragraph granting judgment to the plaintiff with costs against Martin Gottlieb, to be taxed by the Clerk; by amending the second paragraph to direct that the capital stock of Gem Cadillac-Oldsmobile, Inc. be issued equally to Leonard J. Beck and Jay M. Motler; and by striking the third paragraph which stayed the execution of the order and judgment, and, as so modified, affirmed; judgment reversed, on the law and the facts, and matter remitted for the entry of a judgment for costs in favor of plaintiff, with costs upon this appeal against Martin Gottlieb.